UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JEROME RIDDICK,  :
*also known as* JA-QURE AL-BUKHARI,  :
    Plaintiff,  :
  :
v.  :    No. 3:18-cv-408 (SRU)
  :
SCOTT SEMPLE, et al.,  :
    Defendants.  :
  :

# INITIAL REVIEW ORDER

On March 7, 2018, Jerome Riddick, an inmate currently confined at Northern Correctional Institution in Somers, Connecticut, brought a civil rights complaint under 42 U.S.C. § 1983 against five employees of the Connecticut Department of Correction ("DOC"): Commissioner Scott Semple ("Semple"), District Administrator Angel Quiros ("Quiros"), Disciplinary Hearing Officer Nicole Prior ("Prior"), Captain Gregorio Robles ("Robles"), and Counselor Supervisor Canon ("Canon").[1] He is suing all defendants in their individual and official capacities and seeks declaratory and injunctive relief. Riddick has also filed two motions for preliminary injunctive relief. Doc. Nos. 7, 11. In addition, he has filed a motion for an extension of time to file a response to the defendants' opposition to his motions for preliminary injunctions. Doc. No. 13. The defendants, however, have not yet filed an opposition. Riddick has also filed a motion for the appointment of counsel. Doc. No. 8. On March 14, 2018, Magistrate Judge Garfinkel granted Riddick's motion to proceed *in forma pauperis*. *See* Doc. No. 6. For the following reasons, I will dismiss Riddick's complaint without prejudice and deny his motions without prejudice to refiling in the future.

---

[1] The docket activity sheet also lists "Scanning Program – Northern" as a defendant to this action. That listing appears to be typographical error.

I. Standard of Review

Under 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

II. Factual Allegations

Riddick asserts the following factual allegations. On March 30, 2017, Canon was reviewing a Level-2 grievance appeal submitted by Riddick. Compl. ¶ 10. Within that appeal, Riddick wrote that "LT Congelos should be restrained from harassing me the way he is, either you do it or I will." *Id.* at ¶ 11. In responding to the appeal, Canon wrote that Riddick's statement was "perceived to be a threat against Lieutenant Congelos who is currently assigned to Northern C.I." *Id.* at ¶ 12. Thereafter, Canon filed a disciplinary report against Riddick for threatening Congelos. *Id.* On May 3, 2017, Prior found Riddick guilty of the charge and

2

imposed a sanction of fifteen days' punitive segregation. *Id.* at ¶ 13. Quiros later upheld Canon's and Prior's decisions. *Id.* at ¶ 15.

Riddick protested the guilty finding and the manner in which the disciplinary report was issued and decided. *See* Compl. ¶¶ 14-15. He contended that he was punished solely based on the content of his speech, which was "too vague and ambiguous to constitute a true threat." *Id.* at ¶ 22. Riddick argued that, prior to finding him guilty of the charge and imposing punishment, Quiros, Prior, and Canon never presented any evidence showing that the statement in his grievance appeal was a true threat. *Id.* at ¶¶ 17, 23. He also challenges as unconstitutionally vague and overbroad the DOC's definition of threats as "verbal or written statements or . . . physical conduct which causes or is intended to cause fear in any person." DOC Administrative Directive 9.5, § 12EE. He argues that, unlike Connecticut's criminal statute for threatening in the second degree, Conn. Gen. Stat. § 53a-62, Administrative Directive 9.5, § 12EE does not have a standard for proving an inmate's guilt. *See* Compl. ¶ 24.

On April 26, 2017 and May 15, 2017, Robles issued two more disciplinary reports against Riddick for making threats against Semple in letters he wrote to him. Compl. ¶ 25. In one of those letters to Semple, Riddick wrote that he would "make an example and kill" any cellmate with whom he was paired if not a family member. *See* Pl.'s Ex. 3, Doc. No. 1 at 38. In another letter, Riddick wrote that he was going to assault correctional staff, that, when he leaves the prison, he "would like to kill [him] a C/O to get [his] point across," and "that [he] will come back one day or night and sniper rifle ya'll off one by one, or with a submachine gun and slaughter the ones I can." *Id.*, Doc. No. 1 at 40, 45.

Robles claimed in his disciplinary reports that the letters to Semple were "Inmate

3

Requests," but Riddick argued that they were privileged communications to Semple and, therefore, "constitutionally protected conduct." Compl. ¶¶ 26-29. Riddick contends that, pursuant to the Regulations of Connecticut State Agencies § 18-81-28(e)(5), "any written correspondence addressed to . . . [t]he Commissioner of Correction" constitutes a privileged communication and DOC's Administrative Directives "do[] not authorize [prison officials] to write tickets or [disciplinary reports] in connection [with an inmate's] outgoing privileged[d] correspondence." *See* Compl. ¶¶ 28, 30; Pl.'s Ex. 1, Doc. No. 1 at 12.

Riddick alleges that the defendants continue to punish him for making threats under their unconstitutionally vague and overbroad definition of "threats" without any evidence that Riddick's statements are indeed "true threats" in the legal sense. *See* Compl. ¶¶ 33-36. He claims that the defendants are, therefore, punishing him for engaging in "constitutionally protected conduct." *See id.* at ¶ 35.

III. Analysis

Riddick claims that the disciplinary reports issued, processed, and/or affirmed by the defendants constituted an act of retaliation, in violation of his First Amendment rights to free speech and to petition the government for redress of grievances. He also claims that the punishment he received violated his Fourteenth Amendment right to due process because the defendants did not present sufficient evidence that his written statements were in fact true threats. For the following reasons, both claims are dismissed.

    A.    First Amendment Retaliation

"Prison officials may not retaliate against inmates for exercising their constitutional rights." *Riddick v. Arnone*, 2012 WL 2716355, at *6 (D. Conn. Jul. 9, 2012). "To prevail on a

4

First Amendment retaliation claim, [a prisoner] must establish (1) that the speech or conduct at issue was protected, (2) that the [official] took adverse action against the [prisoner], and (3) that there was a causal connection between the protected [conduct] and the adverse action." *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (internal quotation marks omitted); *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009). "In the prison context, 'adverse action' is objectively defined as conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *O'Diah v. Cully*, 2013 WL 1914434, at *9 (N.D.N.Y. May 8, 2013) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)); *see also Ramsey v. Goord*, 661 F. Supp. 2d 370, 399 (W.D.N.Y. 2009) (prisoners may be required to tolerate more than average citizens before alleged retaliatory action against them is considered adverse). In order to allege causation, the prisoner must state facts "suggesting that the protected conduct was a substantial or motivating factor in the prison official's decision to take action against [him]." *Moore v. Peters*, 92 F. Supp. 3d 109, 121 (W.D.N.Y. 2015) (quoting *Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009)). Some of the facts often used to determine retaliatory motive include: (1) temporal proximity between the protected conduct and the alleged retaliatory act, (2) the prisoner's prior good disciplinary record, (3) a finding of not guilty at the disciplinary hearing, and (4) statements by the official(s) showing motivation. *Id.*; *O'Diah*, 2013 WL 1914434, at *10.

"Because claims of retaliation are easily fabricated, the courts consider such claims with skepticism and require that they be supported by specific facts; conclusory statements are not sufficient." *Riddick*, 2012 WL 2716355, at *6; *see also Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) ("virtually any adverse action taken against a prisoner by a prison official – even

those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act"). "Accordingly, plaintiffs in retaliatory motive cases must plead 'specific and detailed factual allegations which amount to a persuasive case' or 'facts giving rise to a colorable suspicion of retaliation.'" *Moore*, 92 F. Supp. 3d at 120 (quoting *Johnson v. Eggersdorf*, 8 F. App'x 140, 144 (2d Cir. 2001)).

Here, Riddick has satisfied the first two retaliation claims – his written grievance appeal and letters to Semple constituted a protected activity and the defendants took adverse action in response to his written submissions by imposing sanctions against him based on what he wrote. However, he has not plausibly alleged a causal connection between his protected activity and the adverse actions. Riddick does not dispute what he wrote in those submissions, that the defendants interpreted the content as threats to prison officials, or that the defendants punished him because of the threatening nature of his statements. He only disagrees with the defendants' interpretation of those statements as threatening and the DOC's policy regarding threats made by prisoners. Because Riddick believes that his written statements were not "true threats" under the applicable legal standard, he concludes that the defendants' actions must be acts of retaliation. *See* Compl. ¶¶ 13, 29. That conclusion, based on his personal belief that his written statements were not threatening, does not suffice to state a retaliation claim. *See Riddick*, 2012 WL 2716355, *6 (conclusory statements insufficient to state retaliation claim); *O'Diah*, 2013 WL 1914434, *10 (no retaliation claim where issuance of disciplinary report was motivated by prisoner's threats and failure to obey orders in violation of facility rules); *Green v. Mowery*, 212 F. App'x 918, 920 (11th Cir. 2006) (rejecting retaliation claim because prisoner did not dispute that disciplinary report was issued as a result of threats made by him against prison official in

violation of DOC rules). Because Riddick does not dispute that the sanctions imposed against him were motivated by the defendants' conclusion that he was threatening prison officials, he cannot prevail on a claim that the defendants retaliated against him for filing his grievance appeal or writing letters to Semple.

Riddick has not stated any facts showing that the submission of the grievance appeal and letters, alone, motivated the defendants to impose sanctions. *See Moore*, 92 F. Supp. 3d at 120. Although there is no question that the sanctions were imposed as a result of the content of the submissions, Riddick does not dispute that the threatening content in the submissions prompted the sanctions. He has not alleged any statements or conduct from the defendants that would suggest that the submission of the appeal and letters, alone, prompted the sanctions. He merely disagrees with the defendants' conclusion that his written statements constituted threats, and therefore, assumes that the sanctions were motivated by retaliation. Therefore, his First Amendment retaliation claim is dismissed.

      B.      <u>Fourteenth Amendment Due Process</u>

To demonstrate a procedural due process violation, Riddick must show that the defendants encroached upon a protected liberty interest. *Alston v. Delpeschio*, 2016 WL 3211805, at *5 (D. Conn. Jun. 9, 2016). "[I]n the prison setting, liberty interests protected by Due Process will be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Reynolds v. Murphy*, 2015 WL 1456880, at *4 (D. Conn. Mar. 30, 2015) (quoting *Sandin v. Conner*, 515 U.S. 472, 485 (1995)). In *Sandin*, 515 U.S. at 485-87, the Supreme Court held that thirty days in punitive segregation did not constitute an atypical deprivation that would violate a prisoner's liberty

interest. Thus, in reviewing a procedural due process claim, I must examine the actual punishment received as well as the conditions and duration of the punishment. *See Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004).

Here, Riddick does not allege that he was subjected to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life" as a result of the disciplinary reports. With respect to the report issued as a result of the grievance appeal against Congelos, Riddick alleges that he was subjected to fifteen days of punitive segregation; Compl. ¶ 13; which is half of the amount of time imposed in *Sandin*. As for the reports issued as a result of the letters to Semple, Riddick only alleges that he "was given multiple sanctions and penalties" following a hearing. Compl. ¶ 31. He does not specify the punishment he received as a result of the guilty finding. Based on the foregoing, Riddick has failed to state a claim that the defendants violated his Fourteenth Amendment right to due process.

**ORDERS**

(1)  The complaint is **DISMISSED without prejudice** for failure to state a claim upon which relief could be granted under 28 U.S.C. § 1915A. If Riddick believes he can allege facts to cure the factual deficiencies of his initial complaint as explained above, he may file an amended complaint within **thirty (30) days** of the date of this order. The amended complaint must contain specific facts showing that the submission of his grievance appeal and letters to Semple, rather than the language perceived as a threat, motivated the defendants to impose sanctions against him to support a claim of retaliation. If Riddick wishes to pursue his due process claim, he must allege the specific punishment(s) he received as a result of the disciplinary report issued concerning the letters to Semple. **Failure to file an amended**

8

**complaint within thirty (30) days of the date of this order will result in the dismissal of this action with prejudice.**

       (2)     Riddick's motions for preliminary injunctive relief (Doc. No. 7, 11) and motion to appoint counsel (Doc. No. 8) are DENIED without prejudice subject to refiling after the submission of a plausible amended complaint in accordance with the previous order. Riddick's motion for extension of time (Doc. No. 13) is DENIED without prejudice as untimely filed.

       It is so ordered.

       Dated at Bridgeport, Connecticut this 7th day of June 2018.

                                      /s/ STEFAN R. UNDERHILL
                                      Stefan R. Underhill
                                      United States District Judge