# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JEROME RIDDICK, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | No. 3:18-cv-408 (SRU) |
| | : | |
| SCOTT SEMPLE, et al., | : | |
|     Defendants. | : | |

## RULING ON MOTION FOR RECONSIDERATION

On March 7, 2018, Jerome Riddick, currently confined in a Connecticut Department of Correction facility, brought a civil rights complaint under 42 U.S.C. § 1983 against five employees of the Connecticut Department of Correction ("DOC"): Commissioner Scott Semple, District Administrator Angel Quiros, Disciplinary Hearing Officer Nicole Prior, Captain Gregorio Robles, and Counselor Supervisor Canon. I interpreted the complaint to assert claims of First Amendment retaliation and violations of Fourteenth Amendment procedural due process rights, neither of which were factually supported by the allegations. Initial Review Order, Doc. No. 16 at 4-8. Thus, I dismissed the complaint without prejudice but permitted Riddick an opportunity to file an amended complaint alleging facts showing that the defendants' actions were motivated by retaliation and/or the specific punishment he received as a result of the disciplinary report that he claimed violated procedural due process. *Id.* at 8.

On June 13, 2018, Riddick filed a Motion for Reconsideration regarding the Initial Review Order. Mot. for Recons., Doc. No. 18. Two days later, on June 15, 2018, he filed the instant motion for reconsideration of the Initial Review Order. Mot. for Recons., Doc. No. 19. He then filed a Motion to Withdraw the original Motion for Reconsideration (Doc. No. 18), alleging that he filed it in error. Mot. to Withdraw, Doc. No. 20. Riddick's Motion to Withdraw

(Doc. No. 20) is **GRANTED**, and his first-filed Motion for Reconsideration (Doc. No. 18) is accordingly **DENIED AS MOOT**.

In the operative Motion for Reconsideration (Doc. No. 19), Riddick states that he is abandoning his retaliation and procedural due process claims and he argues that I overlooked his freestanding First Amendment claim challenging the DOC Administrative Directive 9.5 as unconstitutionally vague and overbroad. For the following reasons, his Motion for Reconsideration (Doc. No. 19) is **DENIED**.

I. Factual Allegations

As stated in my Initial Review Order, Riddick alleged the following facts in his complaint against the defendants:

On March 30, 2017, Supervisor Canon was reviewing a Level-2 grievance appeal submitted by Riddick. Compl. ¶ 10. In that appeal, Riddick wrote that "LT Congelos should be restrained from harassing me the way he is, either you do it or I will." *Id.* at ¶ 11. In responding to the appeal, Canon wrote that Riddick's statement was "perceived to be a threat against Lieutenant Congelos who is currently assigned to Northern C.I." *Id.* at ¶ 12. Thereafter, Canon filed a disciplinary report against Riddick for threatening Congelos. *Id.* DOC Administrative Directive 9.5, § 12EE defines threats as "verbal or written statements or . . . physical conduct which causes or is intended to cause fear in any person." On May 3, 2017, Disciplinary Hearing Officer Prior found Riddick guilty of the charge and imposed a sanction of fifteen days of punitive segregation. *Id.* at ¶ 13. District Administrator Quiros later upheld Canon's and Prior's decisions. *Id.* at ¶ 15.

Riddick protested the guilty finding and the manner in which the disciplinary report was

issued and decided. *See* Compl. ¶¶ 14-15. He contended that he was punished solely based on the content of his speech, which was "too vague and ambiguous to constitute a true threat." *Id.* at ¶ 22. Riddick argued that, prior to finding him guilty of the charge and imposing punishment, Quiros, Prior, and Canon never presented any evidence showing that the statement in his grievance appeal was a true threat. *Id.* at ¶¶ 17, 23.

On April 26, 2017 and May 15, 2017, Captain Robles issued two more disciplinary reports against Riddick for making threats against Commissioner Semple in letters he wrote to him. Compl. ¶ 25. In one of those letters to Semple, Riddick wrote that he would "make an example and kill" any cellmate with whom he was paired if not a family member. *See* Pl.'s Ex. 3, Doc. No. 1 at 38. In another letter, Riddick wrote that he was going to assault correctional staff, that, when he leaves the prison, he "would like to kill [him] a C/O to get [his] point across," and "that [he] will come back one day or night and sniper rifle ya'll off one by one, or with a submachine gun and slaughter the ones I can." Doc. No. 1 at 40, 45.

Robles claimed in his disciplinary reports that the letters to Semple were "Inmate Requests," but Riddick argued that they were privileged communications to Semple and, therefore, "constitutionally protected conduct." Compl. ¶¶ 26-29. Riddick contends that, pursuant to the Regulations of Connecticut State Agencies § 18-81-28(e)(5), "any written correspondence addressed to . . . [t]he Commissioner of Correction" constitutes a privileged communication and DOC's Administrative Directives "do[] not authorize [prison officials] to write tickets or [disciplinary reports] in connection [with an inmate's] outgoing privileged[d] correspondence." *See* Compl. ¶¶ 28, 30; Pl.'s Ex. 1, Doc. No. 1 at 12.

Riddick alleges that the defendants continue to punish him for making threats under their

3

unconstitutionally vague and overbroad definition of "threats" without any evidence that Riddick's statements are indeed "true threats" in the legal sense. *See* Compl. ¶¶ 33-36. He claims that the defendants are, therefore, punishing him for engaging in "constitutionally protected conduct." *See id.* at ¶ 35.

II. Analysis

In my Initial Review Order, I interpreted Riddick's complaint as raising a claim that the defendants retaliated against him for filing his Level-2 grievance against Congelos and his letters to Semple, in violation of his First Amendment right to free speech and a claim that the disciplinary reports he received for threatening DOC officials and subsequent findings of guilt violated his right to procedural due process. Riddick now "abandons" those claims but argues that I overlooked a freestanding First Amendment challenge to the language of DOC Administrative Directive 9.5, § 12EE, which he asserts is vague and overbroad. Mot. for Recons. at 1.

However, "[t]he vagueness doctrine is a component of the right to due process." *Farrell v. Burke*, 449 F.3d 470 (2d Cir. 2006); *see also Richard v. Leclaire*, 2017 WL 9511181, at *15 (N.D.N.Y. Jul. 10, 2017) ("It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined") (quoting *Grayned v. City of Rockland*, 408 U.S. 104, 108 (1972)). A prison policy or directive may be unconstitutionally vague "if persons of common intelligence must necessarily guess at its meaning and differ as to its application, or if it fails to give a person of ordinary intelligence fair notice of conduct proscribed or required by the regulation and encourages arbitrary and erratic behavior on the part of the officials charged with enforcing the rule." *Williams v. Fischer*, 2010 WL 3910129, at *10 (N.D.N.Y. Aug. 17,

4

2010) (citing *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995)). Nevertheless, because a vagueness challenge is essentially a due process challenge, a prisoner making such a challenge must establish that he was deprived of a liberty or property interest protected by the Constitution or federal statute. *See John v. N.Y.C. Dept. of Corrections*, 183 F. Supp. 2d 619, 630 (S.D.N.Y. 2002), *overruled on other grounds*, 130 F. App'x 506 (2d Cir. 2005).

I dismissed Riddick's due process claim because he failed to allege sufficient facts that he was deprived of a protected liberty or property interest. He alleged that he received fifteen days of punitive segregation as a result of the grievance against Congelos and then "multiple sanctions and penalties" from the letters he sent to Semple. Compl. ¶¶ 13, 31. Those allegations, alone, do not show that Riddick was subject to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life," a requirement set forth by the United States Supreme Court in *Sandin v. Conner*, 515 U.S. 472, 485 (1995). Thus, if Riddick wishes to proceed with his vagueness claim, he must submit an amended complaint explaining in detail the specific sanctions he received as a result of the defendants' enforcement of DOC Administrative Directive 9.5, § 12EE.

To the extent Riddick claims that the defendants violated his First Amendment right to free speech by enforcing Administrative Directive 9.5, § 12EE, which he claims is unconstitutionally overbroad, his claim fails. He cannot state a claim that section 12EE violates his constitutional rights. "While prison walls do not separate inmates from the protections of the constitution . . . the Supreme Court has acknowledged that the fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration." *Nicholas v. Raro*, 1997 WL 255291,

5

at *2 (W.D.N.Y. Apr. 7, 1997) (internal quotations omitted; citations omitted). "An inmate, therefore, retains only those first amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Id.* (citation omitted). In order to determine whether a prison regulation is reasonably related to a legitimate penological interest, courts look at four factors: (1) whether there is a valid, rational connection between the regulation and the government interest justifying it and whether that interest is legitimate and neutral; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) whether and how an accommodation of the asserted right will impact staff and other inmates; and (4) whether easy alternatives to the policy in question exist. *Turner v. Safley*, 482 U.S. 78, 89-90 (1987). The prisoner bears the burden of proving that the disputed regulation is unreasonable. *Shabazz v. Cuomo*, 1998 WL 102050, at *3 (S.D.N.Y. Mar. 5, 1998) (citing *Giano*, 54 F.3d at 1053).

"The Supreme Court has urged that judicial restraint be applied when reviewing the constitutionality of prison regulations, noting that 'courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.'" *Nicholas*, 1997 WL 255291, at *3 (quoting *Turner*, 482 U.S. at 84). Thus, prison officials must be given latitude to anticipate the probable consequences of allowing certain speech in a prison environment . . . and must be permitted to take reasonable steps to ensure security and forestall violence." *Id.* (citation omitted). "Even content-based first amendment restrictions have been treated as neutral if their sole purpose is to maintain prison security and decrease violence among inmates." *Id.*

In this case, Riddick cannot show that enforcement of Administrative Directive 9.5, § 12EE is unconstitutionally overbroad. His claims appear to be focused more on the application

of the provision to his specific conduct, which he argued was "too vague and ambiguous to constitute a true threat." Compl. ¶¶ 14-15. He does not make any showing that the prison regulation itself is not reasonably related to legitimate penological interests, and I cannot draw any such conclusion. *See Nicholas*, 1997 WL 255291, at *3 ("[c]ommon sense alone requires the conclusion that a restriction preventing inmates from threatening other inmates or the facility's staff passes constitutional muster"). Moreover, Riddick does not claim that the regulation prevents him from expressing his discontent with prison policies or actions through letters, grievances, or other administrative means. Therefore, Riddick's overbreadth claim fails.

## ORDERS

(1) The Motion to Withdraw the Initial Motion for Reconsideration (Doc. No. 20) is **GRANTED**. The initial Motion for Reconsideration (Doc. No. 18) is **DENIED AS MOOT.** The amended Motion for Reconsideration of the Initial Review Order (Doc. No. 19) is **DENIED**.

(2) If Riddick wishes to proceed with his case, he must file an amended complaint that complies with the Initial Review Order within 30 days of this Order.

It is so ordered.

Dated at Bridgeport, Connecticut this 18th day of August 2018.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge